AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

AUSA Noah Litton

for the

Southern District of Ohio

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)*<br><br>Apple I-Phone in a Nintendo Case recovered from Ronric<br>JOHNSON (B/M DOB: 7/29/1991) after he was taken<br>into custody on April 30, 2022. | )<br>)<br>)<br>)<br>)<br>) Case No. 2:22-mj-433 |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A., incorporated here by reference.

located in the _____ Southern _____ District of _____ Ohio _____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B., incorporated here by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 922(g)(1) & 924(a)(2) | Felon in Possession of Firearm |

The application is based on these facts:

See Attached Affidavit, incorporated here by reference.

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Cole Benner*
*Applicant's signature*

**Cole Benner, ATF Special Agent**
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_telephone after a PDF was submitted via email_ *(specify reliable electronic means)*.

Date: 6/21/2022

*Judge's signature*

City and state: Columbus, OH

Chelsey M. Vascura
United States Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Cole D. Benner, Special Agent (SA) with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), being duly sworn, depose and state the following:

### INTRODUCTION

1.      I am a Special Agent with the ATF and have been so employed since March 2020. I have attended formal training at the Federal Law Enforcement Training Center in Glynco, Georgia, where I completed the Criminal Investigator Training Program. I also attended the ATF National Academy in Glynco, Georgia, where I completed Special Agent Basic Training. I have received training in the enforcement of various criminal statutes enacted in the Gun Control Act of 1968 and in the National Firearms Act of 1934. I am presently assigned as a Special Agent for the ATF Columbus Field Division, Columbus Group I Field Office.

2.      Prior to becoming a Special Agent with ATF, I attended Otterbein University, where I graduated with a bachelor's degree in History with a minor in Sociology. I was previously employed as an Officer for the Raleigh Police Department, starting in 2016. As part of my previous employment, I completed the North Carolina Basic Law Enforcement Training Academy. I also received additional training in Outlaw Motorcycle Gang Investigations. My duties with the Raleigh Police Department included answering emergency calls for service, locating and arresting fugitives, and conducting drug interdiction investigations. I was also previously employed as a Sheriff's Deputy for the Forsyth County, North Carolina, Sheriff's Office, starting in 2019. My duties as a Sheriff's Deputy included answering emergency calls for service, serving subjects with civil and criminal processes, and conducting traffic stops related to drug interdiction.

1

3.     As an ATF SA, I have participated in many federal and state investigations involving the sale, possession, and trafficking of firearms and controlled substances. Through my participation in these investigations, I have debriefed numerous defendants and witnesses with personal knowledge regarding firearms or narcotics trafficking. I have also conducted physical and electronic surveillance, seized evidence and contraband, executed search warrants, and arrested defendants.

## BACKGROUND OF NARCOTICS INVESTIGATIONS

4.     From my participation in these investigations, I have become familiar with the patterns of activity of drug traffickers, the types and amounts of profits made by drug dealers, and the methods, language, and terms that are used to disguise the source and nature of the profits from their illegal drug dealings. Based upon my training and experience, interviews conducted with defendants, informants, and other witnesses to, or participants in, drug trafficking and money laundering activity, I am familiar with the ways in which drug traffickers and money launderers conduct their business, including the various means and methods by which drug traffickers import and distribute drugs, and the ways that drug traffickers and money launderers use cellular telephones, digital display paging devices, and calling cards to facilitate their activity. Drug traffickers and money launderers also use numerical codes and code words to conduct their transactions. In my experience, drug traffickers and money launderers often obtain cellular telephones in fictitious names and/or the names of third parties in an effort to conceal their activities from law enforcement. I am also familiar with the ways in which drug traffickers conceal, convert, transmit, and transport their drug proceeds, including, but not limited to, the use of couriers to transport currency and proceeds, the use of third parties and nominees to purchase or to hold title to assets, and the use of offshore accounts.

2

5.     I have participated in and conducted investigations into activities involving narcotics and other illicit, not-narcotic controlled substances. I am familiar with the methods with which drug traffickers conduct their businesses, including, but not limited to, their methods of importing and distributing controlled substances; their use of cellular telephones, computers and other electronic devices; their use of businesses, houses, multiple vehicles, and other facilities in which controlled substances are stored and meetings are conducted; and their use of numeric codes and code words to conduct their narcotics transactions. I am also familiar with drug traffickers' use of communication devices and texting applications and programs on such devices to conduct their businesses, including, but not limited to, transmitting information regarding price, quantity, and transportation of controlled substances.

6.     Drug Trafficking Organizations (DTOs) depend upon maintaining extensive contacts throughout the country and internationally. Specifically, individuals involved in drug trafficking must maintain contact with drug suppliers, drug couriers, drug customers, and others involved in the supply, transportation, distribution, sales, and marketing of controlled substances. It is essential that members of a DTO maintain contact with one another and use expedient means of communication. To do this, continued access to telephone communication, including text and multimedia messaging communication in varied forms and through varied platforms, is necessary. The use of telephone and text messaging communication is essential in maintaining timely long-distance and local contacts with the original suppliers and those down the organizational chain, including local traffickers. I am aware that individuals involved in illegal drug operations often subscribe their cellular telephones in the names of others or purchase pre-paid cellular telephones that do not require any proof of identification in order to conceal their identities and illegal purpose. It is likewise essential that such organized groups meet to formulate

3

plans concerning narcotics or other illegal activities and to divide their illegal proceeds. Through training and experience, I know that members of a DTO utilize their cellular telephones, to include the push-to-talk, direct connect features, and text messaging, to arrange such meetings.

7. This Affidavit is being submitted for the limited purpose of securing a search warrant for the devices listed herein. I have not included each and every fact known concerning this investigation; rather I have set forth only those facts believed necessary to establish probable cause to search the requested devices.

8. As such, this Affidavit does not include every fact known to me regarding this investigation but will seek to summarize the relevant information. The statements made in this affidavit are based in part on information provided by members of the Columbus Police Department (CPD). I am familiar with the facts and circumstances of the offenses described in this Affidavit based upon myself obtaining information from law enforcement, and from my personal observations and conversations. Unless otherwise noted, whenever in this Affidavit I assert that a statement was made, the information was provided by another law enforcement officer (who may have had either direct or hearsay knowledge of the statement) to whom I have spoken or whose forms I have read and reviewed. Likewise, any information pertaining to vehicles and/or registrations, personal data on subjects, and record checks has been obtained through law enforcement databases.

## ITEMS TO BE SEARCHED

9. This Affidavit of Probable Cause outlines the probable cause in support of the search of Electronic Device #1:

- ED#1: Apple I-Phone in a Nintendo Case recovered from Ronric JOHNSON (B/M DOB: 07/29/1991) after he was taken into custody on April 30, 2022.

4

Case: 2:22-mj-00433-CMV Doc #: 1 Filed: 06/21/22 Page: 6 of 18 PAGEID #: 6

**RELEVANT STATUTES**

10.     For the reasons set forth in this Affidavit, there is probable cause to believe that violations of 21 U.S.C. § 841(a)(1), (b)(1)(B) and 18 U.S.C. § 922(g)(1) ("Target Offenses") have been committed, are being committed, and will continue to be committed by Ronric JOHNSON and others known and unknown and that there is probable cause to believe that JOHNSON used ED #1 to commit the Target Offenses.

**PROBABLE CAUSE**

11.     On April 30, 2022, CPD Officers were working patrol in a marked CPD Cruiser. Officers observed a black Ford F150, bearing OH Tag JOG3249, parked near 1510 Cleveland Avenue, Columbus, Ohio. Officers had been made aware that Ronric JOHNSON was known to operate that vehicle and had an active felony warrant (2022CRA4908) for Discharge into a Habitation. On April 30, 2022, the vehicle had two occupants.

12.     An officer approached the vehicle on foot and identified the driver as JOHNSON. Officers saw JOHNSON was wearing a blue and white jacket and the passenger was wearing a black hoodie. As officers approached the vehicle, JOHNSON turned the ignition on and fled East to Isabel Avenue before turning onto East 13th Avenue, at which point officers lost sight of the vehicle.

13.     Officers began to circulate in the direction the vehicle fled. Officers then observed the vehicle abandoned in the rear of 1217 East 15th Avenue. A bystander approached officers and stated that two individuals entered the house at 1225 East 15th Avenue. The bystander would later recant their statement and say they saw the individuals run next to the residence.

5

14.　An officer was passing 1220 East 15th Avenue when he observed two males who appeared to be hiding behind an SUV (one wearing all blue and another wearing a black hoodie). The two individuals began to run Northbound between the houses located at 1216 East 15th and 1220 East 15th Avenue. Officers observed the male in all blue holding a bag in his right hand.

15.　Officers continued to circulate and observed a male wearing a blue sweater with white stripes in the alley north of East 16th Avenue between Brooks Avenue and Louis Avenue. Upon seeing officers, the male immediately ran South into the backyard of 1228 East 16th Avenue. Officers located the two individuals, identified as JOHNSON and Steven HENRY Jr., hiding in the detached garage in the rear of 1228 East 16th Avenue. Both JOHNSON and HENRY exited the structure and were placed in handcuffs.

16.　Officers conducted a search of the garage where the apprehensions were made and located a blue sweat suit with white stripes (top and bottoms) and a black zip up hoodie. Under the clothing, officers located a clear glove containing a white powder of suspected narcotics.

17.　Officers began canvassing the area for possible additional contraband. An officer opened the trashcan at 1227 East 16th Avenue (directly across from where the apprehensions were made) and observed a blue bookbag and a tan handgun in the bottom of the trashcan. Officers donned fresh nitrile gloves and recovered the tan handgun further described as a FNH, model 509, 9mm pistol bearing SN: GKS0141757 loaded with twenty-five (25) rounds of ammunition, including one round in the chamber.

18.　Officers donned fresh nitrile gloves and recovered the bookbag as well. Officers located a Sig Sauer, model P320, 9mm pistol bearing SN: 58H270409 in the main zipper compartment. Officers also located two digital scales with white residue, multiple bags of

6

suspected marijuana, and a baggie containing individual bags of suspected cocaine inside the bookbag. Officers located an additional magazine for a FNH 9mm handgun in a rear zipper compartment of the bookbag. Officers observed this magazine was identical to the one that was recovered inside the FNH 509 firearm. The additional magazine was loaded with twenty-one (21) rounds of 9mm ammunition.

19. Officers reviewed footage from a community crime camera located at Cleveland Ave. and East 13th Ave. from earlier in the day, which showed JOHNSON and HENRY, wearing the same clothing that was recovered, entering the Ford F150 which originally fled from officers.

20. Officers conducted an administrative inventory of the F150 prior to police impound. Inside the F150, officers located a PMC ammunition box containing six (6) live rounds of 9mm ammunition. Officers located seven (7) live rounds of 40 caliber ammunition. The truck was impounded and transported to the CPD impound lot.

21. Following his arrest, officers conducted a secondary search of JOHNSON and located $1,540.00 from his right sock. Following his arrest, ED#1 was recovered from JOHNSON.

22. JOHNSON was transported to Jackson Pike where he was slated for his active warrant as well as Weapons Under Disability. HENRY was issued a summons for Obstructing Official Business and was transported to his residence.

23. According to a database of criminal records and the Franklin County Common Pleas Clerk of Court Website, JOHNSON has been convicted of the following felony offenses, each punishable by a term of imprisonment exceeding one year:

| Case # | Offense |
|---|---|
| 11CR003883 | Robbery (F3) |
| 17CR001429 | Weapons Under Disability (F3) |
| 18CR002797 | Failure to Comply with Order or Signal (F3) and CCW (F4) |

7

18CR003702          Possession of Drugs (F4)

24.     On January 24, 2012, JOHNSON was sentenced to a term of three years of imprisonment at the Ohio Department of Rehabilitation and Corrections in connection with his conviction for robbery in Franklin County Case No. 11CR003883. As such, I have reason to believe that JOHNSON knew he had previously been convicted of a crime punishable by a term of imprisonment exceeding one year (felony offense) prior to April 30, 2022.

25.     In connection with this investigation, I spoke with SA Jason Burns, who is a qualified ATF Interstate Nexus Expert. On May 6, 2022, SA Burns determined that the firearms recovered on April 30, 2022—an FNH, Model 509, 9mm pistol bearing Serial No. GKS0141757 and a Sig Sauer, Model P320, 9mm pistol bearing Serial No. 58H270409—were not manufactured in the State of Ohio and therefore must have travelled in and affected interstate commerce prior to their recovery by Columbus Police Officers.

26.     On June 3, 2022, I was sent a copy of a Drug Identification Report completed by the CPD Crime Laboratory regarding JOHNSON's arrest on April 30, 2022. The report indicated that the suspected narcotics located in JOHNSON's possession were the following: (1) a plastic bag containing a powder substance (2.864 grams Fentanyl); (2) a plastic bag containing an opaque substance (0.265 grams cocaine base); (3) a partial plastic bag containing a powder substance (0.397 grams cocaine); and (4) a partial plastic bag containing a powder substance (0.410 grams cocaine). Additionally, the lab received seven (7) partial plastic bags containing a powder substance that a complete analysis was not performed on per the Drug Identification Section threshold sample selection policy. The lab report indicated that the glove containing a plastic bag containing a powder substance (5.988 grams) contained no controlled substances.

8

**TECHNICAL TERMS**

27.     Based on my training and experience, I use the following technical terms to convey the following meanings:

28.     Wireless telephone:  A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals.  These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones.  A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone.  In addition to enabling voice communications, wireless telephones offer a broad range of capabilities.  These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet.  Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

29.     Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film.  Digital cameras use a variety of fixed and removable storage media to store their recorded images.  Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader.  Removable storage media include various types of flash memory cards or miniature hard drives.  Most digital cameras also include a screen for viewing the stored images.  This storage media can contain any digital data, including data unrelated to photographs or videos.

9

30.     Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

31.     GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

32.     PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage

10

media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

33. Based on my training, experience, and research, and from consulting publicly available product technical specifications, I know that ED #1 has the capabilities to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA.

34. Based on my training and experience, I also know that ED #1 could contain audio and video recordings, ledgers, notes, and other digital information. I know based on training and experience in previous drug investigations, that individuals involved in the distribution of controlled substances will often use cellular telephones and other electronic communication devices to maintain contact with drug associates, drug sources of supply and drug customers. Further, drug traffickers utilize cellular telephones and tablets (i.e. iPads) to store records, electronic receipts, notes, ledgers, contact information, customer lists, bank statements, physical addresses, e-mail addresses, to retain and transmit photographs, text messages and e-mail messages, and to access the internet (to track packages), and to communicate with other drug traffickers concerning the purchasing, transportation, sale, distribution or possession of controlled substances. I know that drug traffickers will often take "trophy" pictures of drugs, money, guns and other items associated with their illegal activities. I know that drug traffickers will often communicate via voice telephone calls, text messages, email and other electronic messaging to one another to facilitate the distribution of controlled substances. I also know that persons involved

11

in transporting controlled substances often communicate with each other via electronic devices. Additionally, I know that drug traffickers typically use multiple cellular telephones to communicate with their co-conspirators, compartmentalizing different members of the organization on individual telephones. Additionally, narcotics traffickers use digital scales to weigh the narcotics sold to their customers.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

35.     Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the electronic devices. This information can sometimes be recovered with forensics tools.

36.     Forensic evidence. As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how each device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the device because:

37.     Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

38.     Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

39.     A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

40.     The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process.  Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators.  Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves.  Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

41.     Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

42.     Nature of examination.  Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the electronic device consistent with the warrant.  The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection to determine whether it is evidence described by the warrant.

43.     Manner of execution.  Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises.  Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

13

## CONCLUSION

44.     Based upon the above listed facts and circumstances, Your Affiant believes and asserts that there is probable cause to believe on April 30, 2022, JOHNSON did knowingly possess with intent to distribute controlled substances, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(C) and did knowingly possess a firearm while under prohibition as a convicted felon, in violation of Title 18, United States Code, Sections 922(g)(1) and 924(a)(2). Finally, based on the above, it is your affiant's opinion that there is probable cause to search ED#1 for the items requested in Attachment B.

*Cole Benner*

Cole Benner, Special Agent
Bureau of Alcohol, Tobacco, Firearms and
Explosives

This affidavit was sworn to by the Affiant
by telephone after a PDF was transmitted
by email, per Fed. R. Crim. P. 3, 4(d), and 4.1 on
this 21st day of June, 2022.

Chelsey M. Vascura
Chelsey M. Vascura
U.S. Magistrate Judge
Southern District of Ohio

14

## ATTACHMENT A

### DESCRIPTION OF THE ITEMS TO BE SEARCHED

   The items to be searched, which are located as described in the Affidavit supporting this warrant and which are currently in the custody of the Columbus Police Department in Columbus, Ohio, are:

- Apple I-Phone in a Nintendo Case recovered from Ronric JOHNSON after he was taken into custody on April 30, 2022

## ATTACHMENT B
### ITEMS TO BE SEIZED

1. All records on the devices described in Attachment A that relate to violations of Title 21, United States Code, Section 841(a)(1) and (b)(1)(C), to wit: Distribution and Possession With Intent to Distribute Controlled Substances, and Title 18 United States Code, Section 922(g)(1), to wit: Felon in Possession including not limited to the following:

   a. List of customers and related identifying information;

   b. Types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

   c. Any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

   d. All bank records, checks, credit card bills, account information, and other financial records;

   e. Phone number of the particular device;

   f. Incoming and outgoing call data;

   g. Dates and times of telephone calls;

   h. Text message log and text message content stored on the device; and

   i. Stored images and/or videos, and emails.

2. Evidence of user attribution showing who used or owned device described in Attachment A at the time the things described in this warrant created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

3. As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or

stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.